# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SAUNDRA MAGANA,
    *Plaintiff,*

                 v.                                    No. 3:21-cv-1379 (JAM)

ARMANDO F. LUPO,
    *Defendant.*

## ORDER DENYING MOTION TO DISMISS

Connecticut law grants authority to a "state marshal" to engage in the execution of court eviction orders. If a court has entered an eviction judgment and an order of execution, a state marshal may enter the property and remove the evicted occupant's property to a municipal storage location.

State marshals in Connecticut are not state employees. They are independent contractors who are ordinarily paid on a fee-for-service basis.

The plaintiff in this case has filed this action pursuant to 42 U.S.C. § 1983 against a state marshal who executed an eviction order at her home. The plaintiff claims that the state marshal violated her constitutional due process rights when he maliciously destroyed her personal property during the eviction.

The state marshal has moved to dismiss. He argues that as an independent contractor he did not engage in "state action" so he may not be liable for violating the plaintiff's constitutional rights.

I do not agree. In light of my review of the authority of state marshals under Connecticut law, I conclude that Connecticut state marshals engage in state action when they carry out their duties pursuant to a court order to enter a premises and remove an occupant's property. Accordingly, I will deny the motion to dismiss.

1

BACKGROUND

On the afternoon of January 6, 2020, the defendant Armando Lupo was serving as a Connecticut State Marshal when he "carried out an order of the Connecticut Superior Court evicting" plaintiff Saundra Magana from her home in West Hartford, Connecticut.[1] According to Magana, Lupo "intentionally, maliciously and without any justification or excuse destroyed or severely damaged several articles of [her] property causing [her] to suffer economic loss and emotional distress."[2]

Magana claims that Lupo "deprived [her] of her right to be free from the destruction and loss of her property without due process of law, in violation of the Fourteenth Amendment" and as enforceable under 42 U.S.C. § 1983.[3] For purposes of her § 1983 claim, Magana alleges that Lupo "was acting under color of law, that is, under color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of Connecticut."[4]

Lupo has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] Lupo argues that as an independent contractor he did not engage in "state action" as required for him to be subject to liability under § 1983.[6]

DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must credit as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it

---

[1] Doc. #1 at 1–2 (¶¶ 3, 4, 6). I take judicial notice as well of the state court docket reflecting the extended eviction proceedings. *See Wells Fargo Bank, NA, et al. v. Magana*, HFH-CV18-6008214-S (Conn. Super. Ct. 2018); *see also Magana v. Wells Fargo Bank, N.A.*, 2020 WL 3440523 (Conn. Super. Ct. 2020).

[2] Doc. #1 at 2 (¶ 6).

[3] *Ibid.* (¶ 8).

[4] *Id.* at 1–2 (¶ 5).

[5] Doc. #13.

[6] Doc. #13-1.

recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (discussing applicable principles for review of the adequacy of a complaint).[7]

### *The position of Connecticut state marshal*

Connecticut law recognizes the position of "state marshal" as one "who shall have authority to provide legal execution and service of process in the counties in this state pursuant to section 6-38 as an independent contractor compensated on a fee for service basis, determined, subject to any minimum rate promulgated by the state, by agreement with an attorney, court or public agency requiring execution or service of process." Conn. Gen. Stat. § 6-38a(a). The same statutory provision further states that "[a]ny state marshal, shall, in the performance of execution or service of process functions, have the right of entry on private property and no such person shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of such functions." § 6-38a(b).

A separate law specifies the authority of a state marshal in the context of a residential eviction. If an owner or landlord obtains an eviction judgment against a tenant or occupant and "obtain[s] an execution" of the judgment, then "the possessions and personal effects of such defendant or other occupant may be removed by a state marshal, pursuant to such execution, and delivered to the place of storage designated by the chief executive officer [of the municipality] for such purposes." Conn. Gen. Stat. § 47a-42(a). The state marshal must serve advance notice to

---

[7] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions. Nor do case citations include subsequent history not relevant for present purposes.

both the chief executive officer and the tenant or occupant of the marshal's intent to execute the judgment. *See* § 47a-42(b).

Historically, all of these duties of the Connecticut state marshal were performed by Connecticut state sheriffs pursuant to a provision of the state constitution. But the constitution was amended to abolish the sheriff position, and new legislation was enacted in 2000 to allocate a portion of the sheriff's duties to the newly created position of state marshal. *See Vossbrinck v. Hobart*, 207 Conn. App. 490, 502 (2021). The new law "effected the transition from the sheriff system to a system of state marshals, who are selected and regulated by the State Marshal Commission, and judicial marshals, who are employed by the Judicial Branch." *Ibid.*

The Connecticut State Marshal Commission is a state government body with members appointed by the Governor, the leadership of the Connecticut General Assembly, and the Chief Justice of the State of Connecticut. *See* Conn. Gen. Stat. § 6-38b(a). It has authority to fill any vacancy in the position of state marshal with an applicant who shall be subject to the Commission's application and investigation requirements. § 6-38b(g). "No state marshal may be removed except by order of the commission for cause after due notice and hearing." § 6-38b(i).[8]

The State Marshal Commission periodically issues a manual for state marshals. The manual provides that "marshals are sworn public officers appointed by the State Marshal Commission. At the time of appointment, state marshals affirm that they will uphold the Constitution of the United States and the State of Connecticut as well as faithfully discharge their duties according to law." St. Marshal Comm'n, 2017 Connecticut State Marshal Manual

---

[8] State law sets forth other responsibilities for the Commission including that it "shall periodically review and audit the records and accounts of the state marshals." § 6-38e. The Commission otherwise has authority "to establish professional standards, including training requirements and minimum fees for execution and service of process," to "implement policies and procedures to increase state marshal participation in the serving of capias mittimus orders," and to "be responsible for the equitable assignment of service of restraining orders to the state marshals in each county and ensure that such restraining orders are served expeditiously." § 6-38b(e)–(f).

6 (2017), https://portal.ct.gov/-/media/DAS/Communications/State-Marshal-Commission/State-Marshal-Commission-Manual-2017.pdf [https://perma.cc/35NV-V9PC]; *see also* CT Office of the Attorney General, Opinion Letter, 2001 WL 797769, at *1–3 (July 5, 2001) (attorney general opinion that state marshals are subject as public officials to the oath requirement).

The definition of a "peace officer" under Connecticut law includes "state marshal[s] while exercising authority granted under any provision of the general statutes." Conn. Gen. Stat. § 53a-3(9). Thus, "state marshals have the title of peace officer and have the ability to effectuate an arrest as well as other law enforcement type authority in the course of their duties." *Vossbrinck*, 207 Conn. App. at 505. Toward that end, state marshals receive an identification card and a badge that—according to state marshal regulations—they must carry with them while performing their state marshal duties. *See* Conn. Agencies Regs. § 6-38b-5(c).

### *The state action requirement*

A plaintiff may seek relief under 42 U.S.C. § 1983 only if the challenged conduct of the defendant constitutes "state action." *See Meadows v. United Services, Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*); *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). This "state action" requirement is consistent with the general rule that the Constitution does not regulate private conduct and that § 1983 applies only to actions taken under color of state law. "If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001).

Just what is "state action"? The Supreme Court has stated a two-part test: "state action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for

whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (emphasis in original); *see also Meadows*, 963 F.3d at 243 (same).

The state action inquiry focuses on the source of the actor's authority, not the fact that he exceeded it. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

### *Whether Lupo engaged in state action*

It is evident that Lupo's alleged conduct meets both of the requirements to constitute state action. First, Magana has alleged a constitutional deprivation that was caused by Lupo's exercise of a right or privilege created by the State. It was state law that empowered Lupo as a state marshal to engage in the act of "legal execution." Conn. Gen. Stat. § 6-38a(a). It was state law that gave Lupo "the right of entry on private property" in furtherance of his duties of "legal execution." § 6-38a(b). And it was state law that granted Lupo the exclusive right to take possession of and remove Magana's property to be stored with the Town of West Hartford. *See* § 47a-42(a).

Second, Lupo is a person who may fairly be said to be a state actor. Indeed, Lupo has an official title—"state marshal"—given to him by the State of Connecticut. He took an oath to follow the Constitution. That oath would be meaningless if he were *not* a state actor who bears responsibilities under the Constitution. He was also subject to supervision by the state-created marshal's commission. And he exercised "legal execution" responsibilities that are solely the creation of state law and undertaken in his capacity as a peace officer under state law.

In *Schaer v. City of New York*, 2011 WL 1239836 (S.D.N.Y. 2011), the Southern District of New York considered whether New York City Marshals are state actors for purposes of a constitutional claim under § 1983. Under New York law, city marshals have varied duties including "to enforce orders entered in civil cases" as well as to "collect on judgments, tow cars, seize utility meters and carry out evictions." *Id.* at *1. They are not salaried city employees but independent contractors, appointed by the mayor to five-year terms while subject to oversight by the city's department of investigation. *Ibid.*

Judge McMahon concluded that "[t]he idea that a New York City Marshal does not act under color of state law is, frankly, ludicrous." *Id.* at *11. She noted that "[t]he position of City Marshal exists only because it was created by state law" and "[t]hat law gives City Marshals the power to carry out certain state functions that private citizens are not allowed to perform." *Ibid.* "And since the only thing that gives a Marshal the authority to tow a car is the law of the State of New York[,] … a Marshal is 'acting under color of state law' when he does so." *Ibid.*

"Given what Marshals do and why they are allowed to do it, it is hard to understand how the City can argue that Marshals are *not* acting under color of state law with a straight face." *Id.* at *12 (emphasis in original); *see also Hong Tang v. Grossman*, 2021 WL 1091908, at *5 (E.D.N.Y. 2021) ("[New York City Marshal] does not dispute that he was acting under color of state law when effectuating Plaintiff's eviction[,] … nor could he.").[9]

---

[9] Lupo cites recent authority from the District of Connecticut, but these decisions do not address or resolve whether state marshals are engaged in state action when carrying out their legal execution duties in connection with the eviction and removal of property from a person's home. *See Gyadu v. Bainer*, 2021 WL 2073919, at *8 (D. Conn. 2021) (defendant state marshal "d[id] not contest" that he acted under color of state law when carrying out eviction, but § 1983 claims nonetheless dismissed for failure to allege deprivation of federal right); *Gorawara v. Caprio*, 2021 WL 4441738, at *11 (D. Conn. 2021) (dismissing § 1983 claim against private landlords who allegedly conspired with state marshal because, "to the extent state marshals can even be considered state actors," plaintiff pleaded insufficient facts to suggest a conspiracy).

Lupo argues that he was not a state actor because state law classifies him as an independent contractor rather than a state employee. But the same was true in *Schaer*, and the Supreme Court has rejected the notion that the "state action" requirement should turn on the technicalities of employment status. In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court held that a physician who was under contract to provide prison medical services engaged in state action when he furnished medical treatment to a prisoner. The Supreme Court observed that "state employment is generally sufficient to render the defendant a state actor," *id.* at 49, but "[t]he fact that the State employed [the physician] pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the analysis," because "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id.* at 55–56.

The same holds true here. Whether the State chose to label him an independent contractor or a state employee, Lupo's title and powers as a state marshal were solely derived from state law. As a private citizen without the vestment of state authority, he would have had no right at all to enter the premises and remove Magana's property.

Lupo also relies on the Connecticut Appellate Court's decision in *Vossbrinck v. Hobart*, which held that state marshals as independent contractors are neither public officials nor state officials and therefore not entitled to the benefit of sovereign immunity under state law. *See* 207 Conn. App. at 509. But *Vossbrinck* involved a *state* law issue of the scope of state sovereign immunity. *See id.* at 496–509. It did not address the separate *federal* law issue of the state action requirement under § 1983.

Moreover, even if state law were controlling, the *Vossbrinck* decision—as the precedent of an intermediate state appellate court—is entitled to due regard but does not bind a federal district court. *See Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 449 (2d Cir. 2013); *Dibella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). The *Vossbrinck* decision does not cite a Connecticut statute governing claims against the State that defines a "state official" without reference to how or whether they are paid by the State. That statute defines "state officers and employees" in relevant part to include "*every* person elected or *appointed* to or employed in any *office, position or post* in the state government, *whatever* such person's title, classification or function *and whether such person serves with or without remuneration or compensation*." Conn. Gen. Stat. § 4-141(5) (emphasis added).

Two more statutes expressly define state marshals to be "officers" under Connecticut law. *See* Conn. Gen. Stat. § 53a-3(9) (state marshals are "peace officers"); § 14-1(67) (motor vehicle law defining the term "officer" to include "any constable, *state marshal*, inspector of motor vehicles, state policeman or other official authorized to make arrests or to serve process, provided the officer is in uniform or displays the officer's badge of office in a conspicuous place when making an arrest" (emphasis added)).

It is a crime in Connecticut if one "pretends to be a state marshal" in order to "induce another to submit to such pretended *official* authority." § 53a-130(a) (emphasis added). And the Connecticut Secretary of State is required to maintain a list "for public inspection" of "the judges and clerks of the Superior Court, and of the state's attorneys *and state marshals*, with the date of their respective appointments and terms of service," and "shall, when requested, certify to *the official character of the officers* whose appointment is recorded as herein provided." § 3-96

9

(emphasis added). All these Connecticut statutes reflect that state marshals act with official state authority and therefore engage in state action for purposes of liability under § 1983.

Lastly, Lupo relies on cases addressing whether a *private* person or entity has engaged in state action under § 1983. So, for example, courts have grappled with whether private parties— such as a cable television company or an ambulance company or an animal shelter—have engaged in state action for purposes of § 1983.[10] These cases are inapposite because Connecticut state marshals are not private persons. They are state officials. And "[t]he involvement of a state official … plainly provides the state action essential to show a direct violation" of constitutional rights. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 n.5 (1978).

In any event, I would reach the same result even if I were to apply the line of cases that govern whether a private person or entity has engaged in state action. The Second Circuit "has identified three main tests to determine whether a private entity's action is fairly attribut[able] to the state: (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); and (3) when the entity has been delegated a public function by the state ('the public function test')." *Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022).[11]

---

[10] *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) (private cable television company); *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259 (2d Cir. 2014) (private volunteer ambulance organization); *Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) (private animal shelter).

[11] In *Manhattan Community Access Corporation v. Halleck*, the Supreme Court explained that "a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." 139 S. Ct. at 1928. This formulation is arguably narrower than the Second Circuit's formulation in that it does not allow for a finding of state action on the grounds of a "close nexus" between the government and a private individual when they are not engaged in joint action. But because the Supreme Court prefaced its listing of the categories with the words "for example," the *Halleck* decision is not reasonably read to abrogate the Second Circuit's standard, and I follow the Second Circuit's

Here, at least the close nexus test is satisfied (and I do not need to consider the additional alternatives). The function that the marshal serves in the course of carrying out a court order to enter a private home and remove someone's property for safekeeping is a function that is inextricably intertwined with the State's basic law enforcement interest to ensure the peaceable reclamation of an owner's property while also protecting the occupant's personal property interests.

In short, I conclude that the complaint alleges facts to plausibly show that Lupo was engaged in state action when he allegedly deprived Magana of her due process rights. Accordingly, I will deny Lupo's motion to dismiss.

### CONCLUSION

For the reasons set forth above, the Court DENIES the defendant's motion to dismiss (Doc. #13).

It is so ordered. Dated at New Haven this 30th day of September 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

more recent precedent in *Barrows v. Becerra*, *supra*.