UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAUNDRA MAGANA,
    *Plaintiff*,

v.

ARMANDO F. LUPO,
    *Defendant*.

No. 3:21-cv-1379 (JAM)

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Juries are routinely instructed that the law makes no distinction between direct and circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). This case presents the question of whether certain circumstantial evidence—in the absence of any direct evidence—is enough to establish a genuine issue of fact for trial.

It is. Therefore, I will deny the defendant's motion for summary judgment.

### BACKGROUND

This case stems from the physical eviction of plaintiff Saundra Magana from her home in West Hartford, Connecticut on January 6, 2020. The defendant Armando F. Lupo was a Connecticut State Marshal who by law was in charge of supervising the eviction process.

According to the complaint, Marshal Lupo carried out a state court order to evict Magana from her home.[1] The complaint alleges that Marshal Lupo "intentionally, maliciously, and without any justification or excuse destroyed or severely damaged several articles of the plaintiff's property causing the plaintiff to suffer economic loss and emotional distress."[2] The complaint further alleges Marshal Lupo violated Magana's "right to be free from the destruction

---

[1] Doc. #1 at 2 (¶ 6).
[2] *Ibid.*

1

and loss of her property without due process of law" under the Fourteenth Amendment to the United States Constitution.[3]

Marshal Lupo previously filed a motion to dismiss, arguing that he was not a "state actor" for purposes of any claim that he had violated Magana's constitutional rights.[4] In my ruling denying the motion, I described the statutory responsibilities of a Connecticut State Marshal that empowered Marshal Lupo to engage in the act of "legal execution" of state court eviction orders, that gave him the "the right of entry on private property" in furtherance of his duties of "legal execution," and that granted him the exclusive right to take possession of and remove Magana's property for it to be stored with the Town of West Hartford. *See Magana v. Lupo*, 2022 WL 4599006, at *2-3 (D. Conn. 2022) (citing Conn. Gen. Stat. §§ 6-38a and 47a-42(a)).

I noted that "[t]he function that the marshal serves in the course of carrying out a court order to enter a private home and remove someone's property for safekeeping is a function that is inextricably intertwined with the State's basic law enforcement interest to ensure the peaceable reclamation of an owner's property while also protecting the occupant's personal property interests." *Id.* at *6. Thus, I concluded that "the complaint alleges facts to plausibly show that Lupo was engaged in state action when he allegedly deprived Magana of her due process rights." *Ibid.*

Marshal Lupo has now filed a motion for summary judgment.[5] Based on the parties' respective submissions, the following facts are undisputed for purposes of this motion.[6]

---

[3] *Id.* at 8.
[4] Doc. #13 at 1.
[5] Doc. #31.
[6] Magana has admitted all 44 paragraphs in Marshal Lupo's Local Rule 56(a)(1) statement. See Doc. #32-1 at 1-3. Magana, however, has further adduced evidence that "[a]t the time he executed the plaintiff's eviction, the plaintiff's property was left in the exclusive care of the defendant" and that "[w]hen the plaintiff attempted to reclaim her property from the location at which the defendant had deposited it, the property was destroyed or severely damaged." *Id.* at 3-4 (¶¶ 1-2).

On January 3, 2020, Marshal Lupo served Magana with an eviction notice advising her that she would be evicted from her home on January 6, 2020.[7] A town social worker for West Hartford also sent Magana a letter advising that "the Superior Court has given the Marshal the right to physically remove all your possessions from the dwelling" and that "[u]sing a professional moving company the Marshal will move your possessions to an indoor storage area belonging to the Town of West Hartford."[8]

Around 8:00am on January 6, 2020, Marshal Lupo arrived at Magana's residence to conduct the eviction.[9] According to Magana, Marshal Lupo was angry, vicious, and violent when he came to her door, attempting to force entry into her home.[10] Magana became visibly agitated, refused to leave, and slammed the door on Marshal Lupo's foot while he was standing in the doorway attempting to reason with her in order to carry out the eviction.[11]

Magana then called the local police who soon arrived.[12] The police persuaded Magana to leave the property, and she departed around 12:00pm.[13] Marshal Lupo did not enter the home before Magana left.[14] Magana did not return to her home again and had no further interaction with Marshal Lupo.[15]

In the meantime, Marshal Lupo was accompanied by employees of a moving company that was hired by the landlord.[16] After Magana left the premises, the movers packed and removed

---

[7] Doc. #31-2 at 2 (¶ 5).
[8] *Id.* at 2 (¶ 8).
[9] *Id.* at 1, 3 (¶¶ 2, 10).
[10] Doc. #31-7 at 23-24; *see also* Doc. #31-2 at 7 (¶ 34) (quoting Magana's testimony that Marshal Lupo engaged in "violent and vicious behavior" and that "he shouldn't have tried to shove his way in the door, put his foot in the door, and continue to try to come inside when I told him to leave").
[11] *Id.* at 3 (¶ 13).
[12] *Id.* at 3 (¶ 14).
[13] *Id.* at 4 (¶¶ 16, 18).
[14] *Id.* at 5-6 (¶ 27).
[15] *Id.* at 3-4 (¶¶ 15, 19).
[16] *Id.* at 3 (¶ 10).

Magana's possessions from the residence.[17] They delivered her possessions to a storage facility in West Hartford around 7:00pm.[18]

Marshal Lupo attests that he did not touch, handle, damage, or destroy Magana's property and that he did not instruct anyone else to do so.[19] Two other witnesses—the moving company manager and a town social worker—were on the scene for all or much of that day. They attest that they did not see Marshal Lupo touch, handle, damage, or destroy Magana's property, that they did not see him instruct any third party to damage or destroy Magana's property, and that they did not see him act in an unprofessional manner.[20]

For her part, Magana also admits that she did not see Marshal Lupo touch her personal property or hear from anyone that he did so.[21] But she attests that her property was "left in the care" of Marshal Lupo.[22] He "was the one who was violent and vicious when he came to the door, and his conduct continued," and "[w]hoever acted on his behalf, he was the one who was ordering or carrying out the eviction."[23]

When Magana later sought to reclaim her possessions from the storage facility, she found containers filled with destroyed property.[24] Magana surrendered the property because it was destroyed.[25]

### DISCUSSION

The principles governing a court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no

---

[17] *Id.* at 4-5 (¶ 21).
[18] *Id.* at 5 (¶ 23).
[19] *Id.* at 5 (¶¶ 25-26).
[20] *Id.* at 5 (¶¶ 23-24).
[21] *Id.* at 6-7 (¶¶ 29, 30-32).
[22] Doc. #32-2 at 3 (¶ 4 answer).
[23] Doc. #31-7 at 23.
[24] *Id.* at 21.
[25] *Id.* at 39 (¶ 7 answer); *see also* Doc. #32-2 at 10-15 (itemization of damaged property).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough to allow a reasonable jury to decide the case in favor of that party. A court's role at the summary judgment stage is not to judge the credibility of witnesses or to resolve close and contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[26]

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. For cases involving a state actor's random or unauthorized acts, the procedural component of the Due Process Clause bars the intentional destruction of or damage to a person's property without an adequate post-deprivation hearing. *See Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). The substantive component of the Due Process Clause also protects against "arbitrary and unlawful attempt[s] to interfere with private property rights." *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249-251 (5th Cir. 2000) (applying a rational basis test to determine if interference with property rights violated substantive due process); *see also S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 84-85, 91-92 (1st Cir. 2014) (applying a "shocks the conscience" standard in evaluating city's intentional demolition of condominiums); *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999) ("[a]n arbitrary deprivation of an individual's property

---

[26] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

right can violate the substantive component of the Due Process clause of the Fourteenth Amendment" when it "shock[s] the conscience").

A plaintiff may file a lawsuit under 42 U.S.C. § 1983 against a state or local government officer for a violation of the Due Process Clause. Importantly, however, the plaintiff must show that the officer was personally involved in the deprivation of the plaintiff's rights. That is, "'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)). An officer's general supervisory position is not enough to hold the officer liable absent the officer's personal involvement in the deprivation of a constitutional right. *See Tangreti*, 983 F.3d at 618.

Marshal Lupo argues that the evidence is not enough to show that he was the one who damaged or destroyed Magana's property. He argues that there is no direct evidence—such as the testimony of an eyewitness—that he intentionally damaged Magana's property or induced someone else to do so. In opposition, Magana responds that there is enough circumstantial evidence to support her claim.

Other courts have faced similar questions of evidentiary sufficiency in the context of property deprivation claims. For example, in *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 973-74 (7th Cir. 2003), the plaintiffs sued a police officer who took part in the execution of a search warrant at the plaintiffs' home that led to damage to the plaintiffs' truck. The plaintiffs claimed that the officer was responsible because he had admitted that "he was inside the truck at one point (although he denied damaging the hood)." *Id.* at 973. On the other hand, the "plaintiffs [did] not claim to have actually seen any of the seventeen officers involved in the search damage the truck," and they "acknowledge[d] that their sons had access to the garage." *Ibid.* The Seventh

Circuit acknowledged "that circumstantial evidence can be compelling, [but] like any other evidence it depends on its strength," and that "the evidence linking Officer Cooper, one of *seventeen* officers who could conceivably have damaged the truck, is simply too thin to survive summary judgment." *Id.* at 973-74.

Similarly, in *Colbert v. City of Chicago*, 851 F.3d 649, 657-58 (7th Cir. 2017), the Seventh Circuit affirmed a grant of summary judgment against a plaintiff who alleged that four police officers damaged his property during the execution of a search warrant but who "later admitted that he was unable to identify which of the ten searching officers had caused the alleged property damage because he was not allowed in the rooms while the officers conducted their search." *Id.* at 657. The Seventh Circuit noted "§ 1983's individual-responsibility requirement" and that "[s]uing four of ten officers for alleged property damage and then acknowledging the inability to identify those actually responsible for the damage, as Colbert did, does not satisfy that requirement—especially when the sued officials deny having caused that damage." *Id.* at 658.

In *Koller v. Hilderbrand*, 933 F. Supp. 2d. 272 (D. Conn. 2013), Judge Arterton granted a police officer's summary judgment motion against a plaintiff's claim that he had damaged plaintiff's property during the course of the search of his home. The officer swore that he did not damage the plaintiff's property, and the plaintiff's evidence in response showed only that the officer was on the premises, not that he had engaged in any misconduct. *Id.* at 281. Judge Arterton concluded that "in light of Investigator Gallego's averments, the absence of contrary evidence, and the large number of other officers present during the search, no reasonable juror could find that Investigator Gallego had the requisite personal involvement to be liable under § 1983." *Ibid.*

7

By contrast, at least one court has ruled that circumstantial evidence of a police officer's personal involvement in the damage or destruction of property may be enough to withstand a motion for summary judgment. In *Rodriguez v. Gerardot*, 2014 WL 1794560 (N.D. Ind. 2014), a plaintiff claimed that a police officer had unreasonably damaged his car during a search. *Id.* at *1. Neither the plaintiff nor anyone else witnessed the search, leaving the plaintiff with two undisputed facts: that the car was damaged, and that the officer conducted the search. *Id.* at *3. Judge Simon characterized the case as a "close call" and acknowledged that the plaintiff "[was] going to have a very difficult time proving [the defendant] actually caused the alleged damage." *Ibid.* Nevertheless, because "Gerardot alone searched the car, and there is no evidence that anyone else had access to it," Judge Simon ruled that "a reasonable jury could find that, if the damage occurred, it was Gerardot who did it." *Id.* at *4. "While it's true that Rodriguez did not personally witness Gerardot's search, his claim that Gerardot damaged the car rises above the level of speculation to the level of a reasonable inference." *Ibid.*

In light of this precedent and viewing the facts in the light most favorable to Magana, I conclude that there is—if only barely—a genuine issue of fact for trial as to whether Marshal Lupo intentionally damaged or caused a third person to damage Magana's property. To be sure, Marshal Lupo denies touching Magana's property or engaging in any misconduct. Nor is there evidence that anyone saw Marshal Lupo engage in any damage to or destruction of Magana's property or that he instructed anyone else to do so.

But the lack of such direct evidence simply means I must decide if there is enough circumstantial evidence. And there is. First of all, Magana has attested that Marshal Lupo was angry, violent, and vicious that morning when he tried to force his way into Magana's home. Magana slammed the door shut on Marshal Lupo's foot and then called the police. Viewing the

8

evidence in the light most favorable to Magana, Marshal Lupo was in a destructive state of mind and had a specific motive to retaliate against Magana.

A reasonable jury could also consider the fact that Marshal Lupo had statutory authority to control and oversee the entire eviction process. This does not mean that he can be liable simply because of his supervisory role. But it does mean, as a matter of evidentiary inference, that he had ready access to the property and was in a position to exert influence over how third parties such as the movers handled the property. Although there were many others—such as the movers—who also had access to the property, the evidence suggests that it was Marshal Lupo alone who had a motive and reason to damage or destroy Magana's property. And Marshal Lupo's summary judgment motion does not contest Magana's claim that her property was indeed damaged and destroyed.

Marshal Lupo also seeks summary judgment on the basis of a state immunity statute. Connecticut law provides in relevant part that "no [state marshal] shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of [their] functions." Conn. Gen. Stat. § 6-38a(b). But, as I have ruled above, the evidence is enough to show that Marshal Lupo acted wantonly, recklessly, and maliciously in a manner that takes this case outside the scope of the statute. Moreover, "[t]he Supremacy Clause of the Constitution guarantees that state law will not preempt or otherwise erode § 1983 causes of action and state law may not be used to immunize conduct violative of § 1983." *Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005).

All in all, Magana has "just enough evidence… to squeak past summary judgment." *Rodriguez*, 2014 WL 1794560, at *3. Therefore, I will deny Marshal Lupo's motion for summary judgment.

9

**CONCLUSION**

For the reasons set forth above, the Court DENIES the defendant's motion for summary judgment.

It is so ordered.

Dated at New Haven this 29th day of February 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge